UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEROME KNIGHT,

                Petitioner,                                   Hon. Paul L. Maloney

v.                                                   Case No. 5:06-CV-105

SHIRLEE HARRY,

                Respondent.

_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Knight's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Knight's petition be **denied**.


## BACKGROUND

Following a jury trial, Petitioner was convicted of First Degree Murder and sentenced to life in prison. Petitioner appealed his conviction in the Michigan Court of Appeals, asserting the following claims:

    I.     The circuit judge reversibly erred in allowing the prosecution over defense objections to bolster its allegations against Defendant Knight by using Rodney Coleman's hearsay that co-defendant Rice admitted killing a girl and that Coleman made consistent statements to other witnesses, including to

1

Stephanie Harris, his aunt.

II.     Where the prosecution theory was that Jerome Knight paid his co-defendant, Gregory Rice, to commit the murder, the circuit judge committed reversible error in overruling the defense objections to the prosecution arguments that Rice's poverty gave him a motive to accept the payment and commit the murder.

III.     There was insufficient evidence that Jerome Knight aided and abetted the murder because the admissible evidence only showed that he had a possible motive and made some threats but otherwise did not show that he procured the murder other than through assumptions and the impermissible pyramiding of inferences.

IV.     The prosecuting attorney violated the Equal Protection Clause of the United States Constitution when she improperly excluded six African-American jurors from Mr. Knight's jury, and the court specifically held that the prosecutor failed to give sufficient "race neutral" reasons for excluding two of the jurors.

V.     The required exercise of multiple peremptory challenges for the examination of each newly seated juror was a variant of the "struck jury method" of jury selection which deprived the Defendant the right to due process.

VI.     Defendant Knight was denied a fair trial when the jury was permitted to hear prejudicial prior bad acts testimony concerning Defendant's alleged previous assaults on the victim in this case.

VII.     Defendant was denied due process of law by the late endorsement of witness Edward Petty, and the trial court abused its discretion by allowing the late endorsement of witness Edward Petty.

VIII.     The prosecutor erroneously introduced testimony which revealed that the Defendant made no statement

to police, thereby denying him the right to due process.

IX. The prosecutor engaged in prosecutorial misconduct when during cross-examination, she elicited testimony from the Defendant that his defense witnesses had visited him while in jail, thereby denying him due process.

X. The trial court reversibly erred, over a defense objection, in giving the jury the option to convict Mr. Knight under an aiding and abetting theory, as there was insufficient evidence as a matter of Michigan law to support conviction under that theory, and the jury's general verdict did not preclude the possibility that Defendant was in fact convicted as an aider and abetter.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Knight*, No. 231845, Opinion (Mich. Ct. App., Oct. 15, 2002). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court "in lieu of granting leave to appeal, [vacated] the portion of the judgment of the Court of Appeals concerning defendant's peremptory challenge issue under *Batson v. Kentucky*. . .and remand for reconsideration of that issue." *People v. Knight*, No. 122852, Order (Mich., June 19, 2003). Specifically, the court observed:

The trial transcript indicates that the trial judge was not satisfied with the prosecutor's race neutral reasons for peremptorily dismissing several jurors. However, the Court of Appeals based its judgment on the premise that the trial court rejected the *Batson* challenge and, in so doing, the Court of Appeals also appears to have failed to follow *Miller-El v. Cockrell*, 537 U.S. 322 (2003) (holding that evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within the trial judge's province). For these reasons, we remand to the Court of Appeals for reconsideration of whether the trial judge erred in finding a *Batson* violation. If the Court finds that the trial court did not err, the Court shall address whether the trial court was correct in ruling that the racial composition of the final jury cured any *Batson* violation that was not cured due to failure to reseat the peremptorily dismissed jurors.

3

*Id.*

On remand, the Michigan Court of Appeals again affirmed Petitioner's conviction.

*People v. Knight*, No. 231845, Opinion (Mich. Ct. App., Oct. 7, 2003).  In relevant part, the court

stated:

> We have reviewed the transcript reference cited by the Supreme Court, which shows, according to the Supreme Court, that the trial judge was not satisfied with the prosecutor's race neutral reasons for peremptorily dismissing "several" jurors.  The transcript reveals that the trial court was not satisfied with the prosecutor's reasons with respect to two prospective jurors, venirepersons number 2 and 9.  In regard to venireperson # 9, there was never an objection by defense counsel when the prosecutor exercised her peremptory challenge, and venireperson # 9 left the courtroom.  In regard to venireperson # 2, defense counsel did raise a *Batson* challenge immediately upon the prosecutor's exercise of a peremptory challenge.  The jury pool was taken out of the courtroom while the parties addressed the *Batson* challenge.  During this time period, venireperson # 2, apparently under the belief that she had definitively been discharged, left the building.  While the trial court was dealing with the issue and arguments concerning venireperson # 2, it also stated that it had been concerned about the prosecutor's peremptory challenge of venireperson # 9; however, the court did not say anything at the time of the challenge because there had been no objection.  The prosecutor proceeded to give a reason for discharging venireperson # 9.  The trial court was not satisfied with the prosecutor's claimed race-neutral explanations as to both prospective jurors, but the court noted that they had already left the building.

> The trial court indicated that it should have held the two prospective jurors.  However, the court also stated that it did not think the problem was serious enough at that point in the proceedings.  We note that the trial court did not make a specific finding that the prosecutor had engaged in purposeful discrimination.  In fact, at the end of jury selection, the trial court stated that "I don't think either side ended up selecting this panel for any reason other than I think that these are the ones who will be the fair and impartial persons to hear and try this case."  The trial court also indicated that "any *Batson* problems that *may* have" occurred were cured in light of the ultimate racial composition of the jury.  The trial court noted that "[w]e have the same number if not more jurors, African American

4

female jurors[,] on the panel as if we had kept [the two prospective jurors]."

Our Supreme Court has ordered us to reconsider "whether the trial judge erred in finding a *Batson* violation." We are somewhat puzzled by this language in that, as noted above, there was no specific finding of a *Batson* violation. Because the two prospective jurors had already left the courthouse, the trial court apparently found no reason to directly address whether there was purposeful discrimination. Nonetheless, we shall endeavor to follow the Supreme Court's order as written. As such, we are required to begin with the assumption that the trial court found a *Batson* violation, and arguably, a finding of purposeful discrimination is implicit in the trial court's indication of its dissatisfaction with the prosecutor's race-neutral explanations.

An appellate court must give great deference to the trial court's findings on a *Batson* issue because they turn in large part on credibility. The decision on the ultimate question of discriminatory intent represents a finding of fact accorded great deference on appeal, which will not be overturned unless clearly erroneous. Nonetheless, we find that the trial court clearly erred and abused its discretion in finding a *Batson* violation. Assuming that defendant made a prima facie showing that the peremptory challenges had been exercised on the basis of race, and after the prosecutor proffered race-neutral explanations, the trial court was required to determine whether defendant had shown purposeful discrimination. We must accept the trial court's rejection of the prosecutor's race-neutral explanations as a finding of purposeful discrimination. However, that implicit finding of purposeful discrimination directly conflicts with the trial court's belief, clearly stated on the record, that the attorneys for all parties selected a jury motivated solely by the desire to have fair and impartial persons hear the case. The trial court's own language cannot support a finding of purposeful discrimination. Moreover, there were valid race-neutral reasons articulated by the prosecutor justifying the peremptory challenges of venirepersons # 2 and # 9. Venireperson # 9 was very familiar with the circumstances surrounding a first cousin's arrest and conviction on a drug charge, and venireperson # 2 "hoped" she would not compare the victim to her own daughter who was about the same age as the victim. Therefore, although we give great deference to the trial court's findings on a *Batson* issue, the record does not support a conclusion of purposeful discrimination, and the court erred in finding a *Batson* violation.

*Id.* (internal citations and footnotes omitted).

Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal, asserting the following issue:

> I. The Court of Appeals misapplied the record and the law when it held that the trial court abused its discretion in finding a *Batson* violation based on the prosecutor's failure to give sufficient "race neutral" reasons for excluding two of the minority jurors from the jury panel with peremptory challenges.

The Michigan Supreme Court granted Petitioner leave to appeal and affirmed his conviction. *People v. Knight*, 701 N.W.2d 715 (Mich. 2005). In relevant part, the court concluded as follows:

> The record reflects that the trial judge never explicitly found that the prosecutor violated *Batson*. Nor can we infer such a finding on this record. Instead, the record is susceptible to the fair inference that the trial judge acted to preserve the presence of minority jurors on the panel, knowing that the jury pool, as a matter of chance, was largely Caucasian. Protecting a defendant's right to a fair and impartial jury does not entail ensuring any particular racial composition of the jury. The goal of *Batson* and its progeny is to promote racial neutrality in the selection of a jury and to avoid the systematic and intentional exclusion of any racial group.
>
> As a threshold matter, we must note that our task in resolving these cases is difficult, in large part, because of the trial judge's failure to rigorously follow the *Batson* procedures and, more importantly, to clearly articulate her findings and conclusions on the record. Therefore, under these circumstances, we must fairly read the record to determine exactly what the trial judge found and concluded in light of defendants' *Batson* objections.
>
> On the basis of our reading of the voir dire transcripts, we conclude that the trial court did not, in fact, find a *Batson* violation and, thus, there is no error to complain of in these cases. The trial judge's initial expression of dissatisfaction with the prosecutor's race-neutral reasons, when considered in context with her subsequent remarks that "we are getting close to a sensitive issue," related to her concern

about the number of minority veniremembers left on the panel. The judge further articulated her actual motivation in the following excerpt: "I think all of us are being, trying to be conscientious about the selection of these jurors *because of the racial makeup of the jury panels, which we don't have any control over.*" The trial judge's remarks do not reflect a finding that the prosecutor engaged in purposeful discrimination. Rather, the comments demonstrate that her true motivation was to ensure some modicum of racial balance in the jury panel.

*          *          *

The trial judge never expressly found that the prosecutor exercised peremptory challenges for a racially discriminatory reason. In fact, her comments at the end of jury selection suggest a contrary conclusion. The trial judge was more concerned with achieving a proportionate racial composition on the jury than with the exclusion of veniremember Jones. She ultimately concluded that no *Batson* violation existed because a satisfactory number of African-American females were still present on the jury.

*          *          *

The purpose of *Batson* is to prevent discriminatory exclusions of veniremembers on the basis of race or gender. Here, the jury pool, by chance, contained a greater number of Caucasians than African-Americans. The trial judge was preoccupied with this fact. Her *Batson* analysis seemed to be infused with and confused by the erroneous belief that *Batson* is violated if the challenge resulted in too few minority jurors. The trial judge's statements did not imply that she would have kept Jones and Johnson on the jury because she thought they had been wrongfully excluded on the basis of race. Rather, her statements implied that she would have kept them on the jury to ensure that the number of African-American jurors remained proportionate to the number of Caucasian jurors.

The trial judge failed to recognize that a defendant is not entitled to a jury of a particular racial composition as long as no racial group is systematically and intentionally excluded. Defendants' jury was drawn from a fair cross section of the community. Nor was any racial group systematically excluded.

On the basis of our reading of the voir dire transcripts, we hold no *Batson* violation occurred in this case and the trial judge neither

explicitly nor implicitly found such a violation. Giving the appropriate degree of deference to the trial judge's ultimate finding that the prosecutor did not engage in purposeful discrimination, we affirm defendants' convictions.

*Id.* (internal citations and footnotes omitted).

On July 11, 2006, Petitioner initiated the present action, asserting the following claim:

> I. The decision of the Michigan Supreme Court in *People v. Knight*, affirming Petitioner's conviction and sentence for first-degree premeditated murder was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States in *Batson v. Kentucky*, and its progeny and was also based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings under 28 U.S.C. § 2254(d)(1) and (2) because the trial judge found explicitly or implicitly that a *Batson* violation occurred in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## STANDARD OF REVIEW

Knight's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States, or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court

9

decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . .case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

In certain circumstances, however, the deferential standard articulated above does not apply. First, if the state court resolves a particular claim but fails to articulate its analysis, the Court must apply "modified AEDPA deference." *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007). Under this standard, "the court conducts a 'careful' and 'independent' review of the record

and applicable law, but cannot reverse 'unless the state court's decision is contrary to or an unreasonable application of federal law.'" *Id.* at 570. However, where the state court has altogether failed to review a particular claim, such is reviewed de novo. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). In such circumstances, the court conducts a *de novo* review. *Id.*; *see also Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

As the Supreme Court has long recognized, the "[e]xclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." *Batson v. Kentucky*, 476 U.S. 85 (1986). The Supreme Court also long ago recognized that excluding black jurors on the basis of their race implicates a criminal defendant's constitutional rights. *See Strauder v. West Virginia*, 100 U.S. 303, 310 (1879) (holding that an African-American criminal defendant's right to the equal protection of the laws is violated when he is tried before a jury from which African-Americans have been purposefully excluded "because of their color").

The *Batson* Court reaffirmed the principle that a "State's purposeful or deliberate denial to [African-Americans] on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." *Id.* at 84 (quoting *Swain v. Alabama*, 380 U.S. 202, 203-04 (1965)). As the Court observed:

> Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at trial. A person's race simply 'is unrelated to his fitness as a juror.' As long ago as *Strauder*, therefore, the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror. The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.'

*Batson*, 476 U.S. 87-88 (internal citations omitted).

Accordingly, the *Batson* Court held that "the State's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause" which "forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89 (citations omitted).

In *Batson*, the defendant and the jurors whose elimination he challenged were all African-American, *id.* at 82-83, thus the Court was not presented with the question of whether the Constitution was implicated in a circumstance where a criminal defendant was of a different race from the juror(s) whose elimination was allegedly based on racial grounds. The Court has since addressed this question, holding that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races." *Powers v. Ohio*, 499 U.S. 400, 402 (1991).

When a criminal defendant alleges that a prosecutor has exercised a peremptory

challenge in a racially discriminatory manner, the trial court must employ the now familiar three-step burden shifting analysis. First, the defendant must make a prima facie showing that a peremptory challenge was exercised on the basis of race. *See Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Batson*, 476 U.S. at 96-97). When assessing whether the defendant has satisfied this requirement, the trial court "should consider all relevant circumstances." *Batson*, 476 U.S. at 96. As the *Batson* Court recognized, "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." *Id.* at 97. Likewise, "the prosecutor's questions and statements during *voir dire* examination and in exercising the challenges may support or refute an inference of discriminatory purpose." *Id.* The defendant's burden at step one is not "onerous" and is satisfied "by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson v. California*, 545 U.S. 162, 170 (2005).

If the defendant makes a prima facie showing that a peremptory challenge was exercised on the basis of race, the burden shifts to the prosecutor who must articulate a race-neutral rationale for the excusing the juror in question. *See Rice*, 546 U.S. at 338 (citing *Batson*, 476 U.S. at 96-97). The prosecutor's burden at this step is minimal. The prosecutor is not obligated to advance a reason "that is persuasive, or even plausible." *Rice*, 546 U.S. at 338 (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995)). The prosecutor need only articulate a reason that is "comprehensible" and "not inherently discriminatory." *Rice*, 546 U.S. at 338 (quoting *Purkett*, 514 U.S. at 767-68). Nevertheless, the prosecutor cannot satisfy his burden by simply "denying that he had a discriminatory motive" or asserting his "good faith in making individual selections." *Batson*, 476 U.S. at 98 (citation omitted). The prosecutor must articulate "a neutral explanation *related to the particular case to be tried*." *Id.* (emphasis added).

If the prosecutor offers a sufficiently neutral rationale for excusing the juror in question, the burden shifts back to the criminal defendant who must establish that, despite the prosecutor's allegedly race-neutral rationale for excusing the juror in question, the prosecutor purposely excused the juror for discriminatory reasons. *Rice*, 546 U.S. at 338 (citations omitted). At this step of the analysis, the court must evaluate "the persuasiveness of the justification" offered by the prosecutor. However, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* (citation omitted). When making this determination, "all of the circumstances that bear upon the issue of racial animosity must be consulted." *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).

Petitioner claims that he is entitled to relief on the ground that the jury that convicted him was selected in a manner that violated his rights under *Batson*. In resolving Petitioner's appeal, the Michigan Supreme Court reached two conclusions which Petitioner presently challenges. First, the Michigan Supreme Court found that the trial judge did not find, either explicitly or implicitly, that a *Batson* violation occurred during jury selection. *Knight*, 701 N.W.2d at 729-31. Second, the Michigan Supreme Court concluded that "no *Batson* violation occurred in this case." *Id.* at 731. The former determination constitutes a factual finding and the latter a legal conclusion.

**I.**          **Michigan Supreme Court's Factual Finding of no *Batson* Violation**

During jury selection, Petitioner objected to the dismissal of a particular juror on the ground that the juror had been improperly dismissed on the basis of her race. In response to this objection, the trial judge failed to clearly articulate whether she found that the prosecutor had improperly discharged the juror in question for a racially discriminatory reason. Accordingly, one of the questions Petitioner presented on appeal was whether the trial judge had, in fact, found that the prosecutor committed a *Batson* violation during jury selection. The Michigan Supreme Court answered this question in the negative, declaring that "the trial court did not, in fact, find a *Batson* violation." *Knight*, 701 N.W.2d at 730. As previously noted, factual findings made by a state court are presumed to be correct. This presumption can be overcome only by clear and convincing evidence. An examination of the voir dire transcript fails to uncover clear and convincing evidence that the factual finding by the Michigan Supreme Court was incorrect or unreasonable.

Petitioner's claim concerns the prosecutor's decision to use peremptory challenges to dismiss two potential jurors: Ruby Jones and Christina Johnson. These two individuals were selected from the jury venire on the afternoon of the third day of jury selection. (Trial Transcript, July 28, 1999, 59, 69). After being selected, each woman answered a series of questions posed by the trial judge and attorneys. (Tr. 59-75). Shortly thereafter, the prosecutor exercised a peremptory challenge to dismiss Christina Johnson and another potential juror. (Tr. 75-76). Neither Petitioner nor his co-defendant objected when Johnson was excused. (Tr. 76). Instead, two additional potential jurors were selected and questioned, after which the prosecutor used a peremptory challenge to dismiss Ruby Jones. (Tr. 76-85).

At this juncture, Petitioner raised a *Batson* challenge as to the dismissal of Ruby

Jones.  (Tr. 85-86).  The prosecutor then offered her rationale for excusing Ruby Jones, Christina Johnson, and a third African-American that had been excused pursuant to peremptory challenge. (Tr. 86-88).  In response, the trial judge indicated that she was "very surprised" that the prosecutor excused Christina Johnson, but stated that she "didn't say anything because the defense didn't object."  (Tr. 88).  As for Ruby Jones, the judge indicated that she likewise was surprised that the prosecutor excused her.  (Tr. 88-89).  The judge then stated, "I don't accept that," apparently referring to the prosecutor's rationale for excusing Ruby Jones.  (Tr. 89).  However, the judge did not indicate that the challenge to Jones (or any other juror) violated *Batson* or any other legal authority.  Instead, the judge stated:

> I do see that we are getting close, and there are, I don't know two or three minority jurors left in this panel.  So I think we are getting close to a serious issue here.  I wish that somebody had said something about keeping Miss Jones and Miss Johnson.  And then we address this matter because I probably would not have excused either one of them.

(Tr. 89).

Shortly thereafter, the judge further stated:

> The only reason I mention Johnson at the time is because the prosecution excused both Miss Johnson and Miss Bonner at the same time.  I saw a reason for Miss Bonner.  I didn't see a reason for Miss - but I wasn't going to interfere.
>
> I do, but I say, if some, if an objection had been made as far as Miss Johnson and Miss Jones I probably would have addressed it.  And I tend to think I probably would have kept them on the jury.

(Tr. 89-90).

The following exchange then occurred between the judge and the prosecutor:

Prosecutor:    Your Honor, may I just make a record here?

| | |
|---|---|
| Court: | Sure, sure. |
| Prosecutor: | Under *Batson versus Kentucky* cited at 476 U.S. 79, a 1986 case, prosecutor has to explain perem[p]tory challenges with a neutral reason. As long as I come up with a neutral reason for their dismissal, I believe that that's appropriate. And I given - |
| Court: | But the court has to accept or reject whether the reason is neutral or not. |
| Prosecutor: | I understand. |
| Court: | And I'm not, I'm saying that I think we're getting close to a sensitive issue here on Jones and Johnson. That's all I'm saying. I'm making my record too. |

(Tr. 90).

A discussion then ensued between the judge and the attorneys regarding whether the defense attorneys had improperly excused potential jurors on racial grounds. (Tr. 91-95). At the conclusion of this particular discussion, the trial judge stated:

We have to be realistic here. I really don't want any problems with this case, especially along these lines. I'm not satisfied with the prosecutor's response as to potential juror Jones and Johnson. But I think they've already left. So, I'm going to say from this point on let's be very careful about the selection. If you think that you, if the defense is not satisfied with me just giving a cautionary instruction to the prosecution, then I'll address any other remedy.

But realistically I think all of us are being, trying to be conscientious about the selection of these jurors because of the racial makeup of the jury panels, which we don't have any control over. I'm just saying, I let Jones and Johnson go without holding them, especially Jones. I guess I should have held her and I didn't do that. I'll take the fault for that. But from this point on let's try to be careful with this jury selection. We are to[o] close to getting this jury selected.

(Tr. 95-96).

A moment later, the judge further stated:

I don't think it is serious enough at this point. We do have some
minorities left on the jury panel and I'll be watching this closely.

(Tr. 96).

Jury selection then continued without incident to completion. (Tr. 96-127). After

providing the jurors with some preliminary instructions, the judge concluded by stating:

With the panel that we ended up with, I think that any *Batson*
problems that may have been there have been cured. We have the
same number if not more jurors, African-American female jurors on
the panel as if we had kept Miss Christina Johnson and Miss Ruby
Jones. I don't think either side ended up selecting this panel for any
reason other than I think that these are the ones who will be the fair
and impartial persons to hear and try this case.

(Tr. 131-32).

As the Michigan Supreme Court observed, the task of discerning precisely what the

trial judge concluded in response to Petitioner's *Batson* objection "is difficult, in large part, because

of the trial judge's failure to rigorously follow the *Batson* procedures and, more importantly, to

clearly articulate her findings and conclusions on the record." *Knight*, 701 N.W.2d at 730. After

examining the record, however, the Michigan Supreme Court concluded that "the trial court did not,

in fact, find a *Batson* violation." *Id.* In support thereof, the court observed:

The trial judge's remarks do not reflect a finding that the prosecutor
engaged in purposeful discrimination. Rather, the comments
demonstrate that her true motivation was to ensure some modicum of
racial balance in the jury panel. . .The trial judge never expressly
found that the prosecutor exercised peremptory challenges for a
racially discriminatory reason. In fact, her comments at the end of
jury selection suggest a contrary conclusion. The trial judge was
more concerned with achieving a proportionate racial composition on
the jury than with the exclusion of veniremember Jones. She

18

ultimately concluded that no *Batson* violation existed because a satisfactory number of African-American females were still present on the jury. . .Here, the jury pool, by chance, contained a greater number of Caucasians than African-Americans. The trial judge was preoccupied with this fact. Her *Batson* analysis seemed to be infused with and confused by the erroneous belief that *Batson* is violated if the challenge resulted in too few minority jurors. The trial judge's statements did not imply that she would have kept Jones and Johnson on the jury because she thought they had been wrongfully excluded on the basis of race. Rather, her statements implied that she would have kept them on the jury to ensure that the number of African-American jurors remained proportionate to the number of Caucasian jurors.

*Id.* at 730-31.

The factual finding by the Michigan Supreme Court, that the trial judge did not find a *Batson* violation, is presumed to be correct. Petitioner can overcome this presumption only by *clear and convincing* evidence. Petitioner has neither cited to nor submitted any evidence beyond the voir dire transcripts referenced above. While Petitioner argues that the record indicates that the trial judge did find a *Batson* violation, the finding by the Michigan Supreme Court to the contrary is a perfectly reasonable interpretation of an unclear record. As the concurring justices observed:

Throughout the discussion, the trial court stated that "we are getting close to a serious issue here." And after noting that the trial court has to accept or reject the prosecutor's reasons, determining whether they are race-neutral or not, the trial court stated: "And I'm not, I'm saying that I think we're getting close to a sensitive issue here on Jones and Johnson. That's all I'm saying. I'm making my record too." When this entire response is considered, it suggests that the trial court was not finding that a *Batson* violation had occurred, but was simply cautioning the parties that they may be getting "close" to a sensitive issue. **Getting "close to a sensitive issue" is not the same thing as finding that a *Batson* violation has occurred and a prospective juror has been improperly excused on the basis of race**.

*Knight*, 701 N.W.2d at 731 (emphasis added).

While the record *might* arguably support the contrary conclusion such does not constitute *clear and convincing* evidence that the finding by the Michigan Supreme Court is incorrect or otherwise infirm. Accordingly, this claim raises no issue on which habeas relief may be granted.

## II.  Michigan Supreme Court's Legal Determination of no *Batson* Violation

In addition to determining that the trial judge did not find a *Batson* violation, the Michigan Supreme Court further held that "no *Batson* violation occurred in this case." *Knight*, 701 N.W.2d at 731. Petitioner argues that the prosecutor excused potential jurors Christina Johnson and Ruby Jones for racially discriminatory reasons in violation of his constitutional rights as articulated in *Batson*.

As discussed above, claims that a prosecutor has exercised a peremptory challenge in a racially discriminatory manner are analyzed pursuant to a three-step analysis. The defendant must first make a prima facie showing that the peremptory challenge was exercised on the basis of race. If defendant makes the requisite showing, the burden shifts to the prosecutor who must articulate a race-neutral rationale for excusing the juror in question. If the prosecutor satisfies this requirement, the burden shifts back to the defendant who must establish that, despite the prosecutor's allegedly race-neutral rationale for excusing the juror in question, she purposely excused the juror for discriminatory reasons.

While the trial judge never expressly found such to be the case, Petitioner appears to have made a prima facie showing that the potential jurors in question were excused on the basis

of race.[1]  As previously noted, the prosecutor's burden at the second step of the analysis is not onerous.  The prosecutor is not obligated to advance a reason "that is persuasive, or even plausible," but instead need only articulate a reason that is "comprehensible" and "not inherently discriminatory."

The prosecutor stated that she excused Christina Johnson because she had a "close relative" that had been convicted of a drug offense.  (Trial Transcript, July 28, 1999, 87).  The prosecutor further stated that Johnson's demeanor and tone of voice raised doubts about her ability to be fair and impartial.  (Tr. 87).  The prosecutor indicated that Ruby Jones was excused because of a concern that she would view the victim's life style unfavorably and not be able to set such thoughts aside when considering the evidence.  (Tr. 87-88).  The reasons offered by the prosecution are "comprehensible" and "not inherently discriminatory."  Moreover, such are neutral explanations related to the particular case to be tried.  Thus, the prosecutor satisfied her burden at step two of the analysis.

The prosecutor having made the requisite showing at step two, the burden shifted back to Petitioner to demonstrate that despite the prosecutor's allegedly race-neutral explanations, she nevertheless purposely excused Christina Johnson and Ruby Jones for discriminatory reasons.  As previously noted, Petitioner bears the "ultimate burden of persuasion" on his *Batson* challenge.  Petitioner has made no such showing nor does the record support such.  Petitioner argues that certain

---

[1]  Petitioner asserts that the first step of the *Batson* analysis is "not at issue" in this matter because the trial court "proceed[ed] to the second and third steps" of the *Batson* analysis.  Petitioner is correct that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot."  *Hernandez v. New York*, 500 U.S. 352, 359 (1991).  While, the prosecutor did offer race-neutral explanations for excusing Christina Johnson and Ruby Jones, the trial judge, as recognized by the Michigan Supreme Court, did not properly apply *Batson* in this matter.  Accordingly, while the Court does not disagree with Petitioner's legal analysis on this particular point, the Court questions its applicability in this circumstance.  Accordingly, the Court has addressed the first step of the *Batson* analysis.

statements made by the trial judge, identified above, demonstrate that he satisfied his burden. As previously discussed, however, the trial judge's statements during voir dire were ambiguous and reflected a misunderstanding of the proper *Batson* analysis. The decision by the Michigan Supreme Court that "no *Batson* violation occurred in this case" is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.


## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Knight's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: February 23, 2010
  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge